UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GILBERT NOBLE, individually and<br>on behalf of a class of<br>similarly situated persons, | : | |
| | : | CASE NO.:  2:08-cv-3658-SDW-MCA |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| PORSCHE CARS NORTH AMERICA,<br>INC., a Georgia Corporation, | : | |
| | : | |

BRIEF IN OPPOSITION TO PORSCHE CARS NORTH AMERICA, INC.'S MOTION
TO DISMISS PURSUANT TO FED.R.CIV.P.12(b)(6).

On the Brief
Of Counsel
Bruce H. Nagel
Elliott Louis Pell

Nagel Rice, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400
Attorneys for Plaintiff
Gilbert Noble

<u>Motion Return Date</u>:
<u>Oral Argument Requested</u>

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES............................... ii,iii

STATEMENT OF FACTS..................................... 1

LEGAL ARGUMENT........................................ 2

    A. Legal Standard On A Motion To Dismiss Pursuant
       To Fed.R.Civ.P.12(b)(6) ........................... 2

    B. Plaintiff Has Stated A Common Law Cause Of
       Action For Strict Liability ...................... 3

    C. Plaintiff Has Stated A Claim For Relief Under The
       New Jersey Consumer Fraud Act ................... 11

CONCLUSION........................................... 15

TABLE OF AUTHORITIES

CASES

Allegheny Gen. Hosp. V. Philip Morris, Inc., 228 F.3d
429, (3d Cir.2000) ........................................ 5

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........... 6

British Ins. Co. of Cayman & Safety Nat. Cas., 335
F.3d 205 (3d.Cir. 2003) ................................... 7

Conley v. Gibson, 355 U.S. 41 (1957) ..................... 5

Consumers Power Co. v. Curtiss-Wright Corp., 780 F.2d
1093 (3d. Cir. 1986) ..................................... 17

Goldson v. Carver Boat Corp., 309 N.J. Super. 384
(App. Div. 1998) ......................................... 15

Green v. Gen. Motors Corp., 2003 WL 21730592
(App. Div. 2003) ......................................... 2

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ................ 5

In re Burlington Coat Factory Sec. Litig., 114 F.3d
1410 (3d. Cir. 1997) ..................................... 5

Int'l Flavors & Fragrances, Inc. v. McCormick & Co., Inc.,
575 F.Supp.2d 654 (D.N.J. 2008) .......................... 15

Marrone v. Green & Polmare Constr., Inc., Docket No. A-3651-
07T2, 2009 N.J. Super. LEXIS 24 (App. Div. Feb. 4, 2009) ...15

Millman v. Subaru of America, Inc., Civil Action No. 07-4846
(JLL), 2008 U.S. Dist. LEXIS 17257 (D.N.J. Mar. 6, 2008) ...15

Naporano Iron & Metal Co. v. American Crane Corp.,
79 F.Supp.2d 494 (D.N.J. 2000) ........................... 6

Scheuer v. Rhodes, 416 U.S. 232 (1974) ................... 2

State v. Pena-Flores, 198 N.J. 6 (2009) .................. 12

Trans Hudson Express v. Nova Bus Co., No. 06-4092, 2007 U.S.
Dist. LEXIS 26724 (D.N.J. Ap. 10, 2007) .................. 15

2

Varacallo v. Massachusetts Mutual Life Ins. Co., 332
N.J. Super. 31 (App. Div. 2000) ...........................18

Zorba Contractors, Inc. v. Housing Auth., City of
Newark, 362 N.J. Super. 124, 139 (App. Div. 2003) ..........18


STATUTES

N.J.S.A. 2A:58C-1 to 11 ....................................6

N.J.S.A. §2A:58C-1(a) ......................................3

N.J.S.A. 39:1-1 ...........................................12

N.J.S.A. 39:4-1 ...........................................12

N.J.S.A. 39:5-1 ...........................................12

N.J.S.A. 39:5B-18 .........................................12

## STATEMENT OF FACTS

Plaintiff filed an Amended Class Action Complaint against Defendant Porsche Cars of North America, Inc. stating claims for relief for strict products liability under the common law (First Count), and for Consumer Fraud Act N.J.S.A. 56:8-8-1 et seq. (Second Count). Defendant filed an application to dismiss the Amended Class Action Complaint, pursuant to F.R.Civ.P.12(b)(6).

In 2005, Plaintiff purchased a Porsche 911, VIN WPOAA2991XS621244 from Buy Right Dealership in Union City, New Jersey (Complaint, para.15). Although Plaintiff serviced his Porsche in a timely and proper manner, in or about October 2006, Plaintiff noticed large quantities of smoke being emitted from the tail pipe when he started the automobile (Id., paras. 16-17). When Plaintiff took his Porsche to Protosport, a Porsche specialist in Pompton Plains, New Jersey, a representative of Protosport told him that antifreeze leaked into the engine oil through a defective cylinder and that the leak was caused by a latent manufacturer's design defect with the 1999/996 Porsche model engine, the first year that Porsche switched from an air-cooled to a water-cooled engine (Id., paras. 18-19). The representative of Protosport told Plaintiff that the engine was damaged beyond repair (Id., para. 20).

Although Porsche was on notice that the Porsche 911 engines were defective and unreasonably dangerous, Porsche has concealed

the nature of the aforesaid defect from Plaintiff and class members, failed to recall the Porsche 911 to repair the defect and failed to repair the defect or reimburse owners of the Porsche 911 for repairs. (Id., paras. 4-5, 22-23). As a result, Plaintiff instituted the present Amended Class Action Complaint.

LEGAL ARGUMENT

A. Legal Standard On A Motion To Dismiss Pursuant To Fed.R.Civ.P.12(b)(6)

The relevant analysis under Federal Rule of Civil Procedure 12(b)(6) is firmly established. Courts must accept all well-pleaded averments in the complaint as true and draw all reasonable inferences in favor of the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. V. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir.2000). The controlling question is whether Plaintiffs should be given an opportunity to offer evidence in support of their claims. Scheuer, 416 U.S. at 236. Dismissal is inappropriate unless it appears beyond sensible doubt that Plaintiff can prove no set of facts. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Courts are not required to credit bald assertions or legal conclusions improperly stated in the complaint. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d. Cir. 1997). But a

sound complaint need only set forth a short, plain statement of the claim demonstrating that the pleader has a right to relief. See, <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).

B. Plaintiff Has Stated A Common Law Cause Of Action For Strict Liability.

Although the New Jersey Product Liability Act ("the PLA") <u>N.J.S.A.</u> 2A:58C-1 to 11, appears to bar Plaintiff's strict liability claim for relief, the PLA was "not intended to codify all issues relating to product liability . . . " N.J.S.A. §2A:58C-1(a); <u>Naporano Iron & Metal Co. v. American Crane Corp.</u>, 79 F.Supp.2d 494, 499 (D.N.J. 2000)(applying New Jersey law). Thus, the New Jersey Legislative intended to retain the viability of common law causes of action for strict liability in the interstices of the PLA.

This case projects a seminal issue relating to that reservation of common law claims for relief, to wit: whether persons, like Plaintiff, who purchase an unreasonably dangerous, defective automobile, like the Porsche 911, that projects a substantial risk of causing a sudden, unexpected and calamitous accident causing serious harm to persons or other property can maintain a common law cause of action for strict liability. No New Jersey Supreme Court case has addressed this important question.

3

Thus, this Court must now determine how the New Jersey Supreme Court would decide whether the aforesaid common law cause of action exists. <u>British Ins. Co. of Cayman & Safety Nat. Cas.</u>, 335 F.3d 205, 211 (3d.Cir. 2003).

Although recent New Jersey cases have disallowed certain specific exceptions to the economic loss doctrine, those precedents confirm the existence of exceptions to the economic loss doctrine. Indeed, the Supreme Court in <u>Alloway v. General Marine Industries, L.P.</u>, 149 N.J. 620, 639 (1997) "did not . . . address the question of whether a sudden and calamitous accident that ultimately injured solely the defective product but posed a serious risk to other property or persons may be rectified in tort". [Footnote omitted]. <u>Naporano</u>, 79 F.Supp.2d at 499-500.

In arguing that the Court should eschew the application of tort principals, Defendant has miscalculated <u>Green v. Gen. Motors Corp.</u>, 2003 WL 21730592 (App.Div. 2003), the only recent New Jersey precedent addressing whether the aforesaid exception to the economic loss doctrine applies to automobiles. In <u>Green</u>, Plaintiffs instituted a class action against General Motors, Ford and Saturn alleging design defects in certain automobiles. "Following a period of discovery, the trial judge granted summary judgment to defendants . . ." <u>Id</u>. at *1. The Appellate Division affirmed, noting that: "[p]rior to their participation in the lawsuit, none of the plaintiffs experienced any

4

difficulty with the front seats of their cars. . . [with one exception] a purported defect unrelated to this matter"; that "[s]ince the lawsuit, no one has sought to have the defect that has been alleged repaired, and no one has brought the alleged defect to the attention of a local dealer . . . ;  "[a]ll have continued to drive their cars, and all have continued to carry passengers with them." Id., at *2.

The real importance of Green to this case is that the New Jersey courts did not dismiss the cause of action for strict liability.  Discovery occurred.  Plaintiffs simply failed to prove "the existence of a product that is so dangerous that social needs justify the application of tort principles." [Citations omitted]. Id., at 6.  Thus, the Appellate Division in Green phrased the issue of whether New Jersey permits recovery by "Plaintiffs claiming a latent design defect in an automobile that met all governmental specifications at the time of its manufacture and performed as warranted throughout the warranty period and thereafter." Id.  The Green court, like other New Jersey precedents, left the issue unresolved.

In this case, like Green, Plaintiff should be afforded an opportunity to demonstrate the truth of the Porsche 911 and what really happened here.  These are the averments in the Amended Class Action Complaint that distinguish this case from Green.

3.   The Porsche 911's are equipped with defectively designed Porsche engines. Due to these defective engines, the Porsche 911's are rendered inoperable and they pose a grave danger to the public. These design defects cause antifreeze to leak into the engine oil through a defective and cracked cylinder. The Porsche engine is water-cooled and when the antifreeze and water solution mix with the engine oil, the damage to the engine is irreparable. These defects are unreasonably dangerous, as they may cause large amounts of smoke to be emitted from the tail pipe as well as severe damage to and ultimate failure of the Porsche engine.

4.   By complaints of its customers, Porsche was on notice that the Porsche 911 engines were defective and not fit for their intended purpose of properly and effectively converting gasoline into motion so that the car moves and functions. Porsche actively concealed the existence and nature of said defects from Plaintiff and the Class Members at the time of purchase and thereafter. Porsche has not recalled the Porsche 911 to repair the defects, nor has it offered to repair the defects to its customers free of charge, nor has it offered to reimburse Porsche owners, present or past, who incurred costs relating to engine system repairs, replacement and/or associated costs.

5.   The Porsche 911 is an unreasonably dangerous, defective automobile that projects a substantial risk of causing a sudden, unexpected and calamitous accident causing serious harm to persons or other property.

15.  Noble purchased his Porsche 911, VIN WP0AA2991XS6621244, approximately three years ago from Buy Right Dealership in Union City, New Jersey while a resident of New Jersey.

16.  From the time of purchase until October 2006, Noble serviced his vehicle timely and properly.

17.  On or about October 2006, Noble learned about the defect with his car's Porsche engine when he started his Porsche 911 and noticed large quantities of smoke being emitted from the tail pipe.

18.  In order to determine the nature and extent of this problem with the vehicle's engine, Noble immediately contacted his mechanic, who inspected the car and found antifreeze in the engine oil. Thereafter, Noble's mechanic recommended that he take the Porsche 911 to a Porsche specialist and the vehicle was towed to Protosport, a Porsche specialist in Pompton Plains, New Jersey.

19.  At Protosport, the vehicle underwent extensive inspection and diagnosis and it was determined that anti-freeze leaked into the engine oil through a defective cylinder. Protosport informed Noble that they had previous experience with this same engine problem and that it was caused by a latent manufacturer's design defect with the 1999 996 Porsche model engine, which was the first year that Porsche switched from an air-cooled to a water-cooled engine.

20.  Protosport informed Noble that the Porsche engine was damaged beyond repair and that he would have to either buy a used engine or buy a rebuilt crate engine directly from Porsche, to

which engine Porsche had corrected the aforesaid design defect.

21. Noble subsequently contacted Porsche Cars of North American ("PCNA") on multiple occasions to report and complain about the defects with the Porsche engine.

22. A regional service manager from PCNA ultimately informed Noble that PCNA would not pay for the replacement of the defective engine and related out-of-pocket expenses because his vehicle was currently more than four years outside of its 4yr/50,000 mile new car limited warranty, and therefore was not eligible for any type of goodwill funds which are utilized at PCNA's discretion and are reserved for individuals who have purchased products new from a franchised retail dealership.

23. On information and belief, Porsche, through its dealerships, agents, servants, employees and/or by customers and other members of the public, were put on actual and/or constructive notice of the defective Porsche engines. Porsche knew or should have known that the engines in the Porsche 911's were defective. Further, Porsche did not offer to cover the costs of replacing these defective Porsche engines, claiming that such costs were not covered by the 4yr/50,000 mile limited warranty.

The nature of automobiles supports the adoption of an exception to the economic loss doctrine in the case of latent defects in automobiles that have a substantial capacity to cause sudden, unexpected and calamitous accidents causing serious injury. In modern American society, automobiles are <u>sui</u>

8

_generis_.   They are a necessity for the vast majority of Americans.   The safe operation of automobiles is a compelling state interest.   For driving an automobile, impacts fellow drivers, passengers, pedestrians and the public at large. Automobiles are peripatetic; they affect everyone.   Sources of law confirm that automobiles are a discrete, special object of regulation.   See, N.J.S.A. 39:1-1 _et. seq._; N.J.S.A. 39:4-1 _et. seq._; N.J.S.A. 39:5-1 _et. seq._; N.J.S.A. 39:5B-18 _et. seq_. There are special rules for the revocation or suspension of a driver's license.   Given the ready mobility and nature of automobiles, special rules apply to warrantless searches and seizures of automobiles.   See, _State v. Pena-Flores_, 198 N.J. 6 (2009).   Safety concerns will be underscored by the need to develop alternative automobiles, like the Chevrolet Volt, a battery operated automobile that is designed to travel approximately forty miles after being charged.

New Jersey would adopt what has been termed "the intermediate approach", _viz._, unreasonably dangerous defective automobiles that project a substantial risk of causing a sudden, unexpected and calamitous accident causing serious harm to persons or other property establish a common law cause of action for strict liability.   See _Pratt & Whitney Can., Inc. v._ _Sheehan_, 852 P.2d 1173, 1181 (Alaska 1993); _Salt River Project_ _Agric. Improvement & Power Dist. V. Westinghouse Elec. Corp.,_

143 Ariz. 368, 694 P.2d 198, 209-10 (Ariz. 1984), abrogated on other grounds by Phelps v. Firebird Raceway, Inc., 210 Ariz. 403, 111 P.3d 1003 (Ariz. 2005); Vulcan Materials Co. v. Driltech, Inc., 251 Ga. 383, 306 S.E. 2d 253, 257 (Ga. 1983); Am. Fire and Cas. Co. v. Ford Motor Co., 588 N.W.2d 437, 439-40 (Iowa 1999); Morris v. Osmose Wood Preserving, 340 Md. 519, 667 A.2d 624, 632 (Md.1995); Russell v. Ford Motor Co., 281 Or. 587, 575 P.2d 1383, 1386-87 (Or.1978); Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc., 119 Wash.2d 334, 831, P.2d 724, 733-35 (Wash.1992); Anderson v. Chrysler Corp., 184 W.Va. 641, 403 S.E.2d 189, 192-93 (W.Va.1991).

New Jersey would adopt "the intermediate approach" because application of the relevant factors - the nature of the risk, the gravity of the harm and the probability that injury will occur - compellingly induces the conclusion that the inevitable danger to person and property caused by a mobile, defective vehicle is too great to deny application of tort principles. Simply put, the fundamental distinction between tort and contract liability, to wit: hazard and danger, justifies application of both principles here.  Surely, in the case of automobiles, inherently mobile products, the nature of the risk is substantial, particularly considering the engine defect at issue here.  Beyond question, the gravity of the harm is serious.  The probability of injury is great in light of the

admitted nature of the defect, a palpably defective engine that inevitably malfunctions.

In light of the above, the Court should apply "the intermediate approach" and allow Plaintiff an opportunity to take discovery. <u>Russell v. Ford Motor Co</u>., 281 Or. 587, 595-96, 575 P.2d 1383 (1973) ("In this case the conditions for recovery are met. If the alleged defect in the truck axle housing existed, it was certainly a man-endangering one. The property for which damages are claimed, the truck, was assuredly wrecked in consequence of precisely the defective condition, and under the circumstances, that made the product dangerous to the user. When a defective axle assembly causes a truck to leave the road and turn over, even if by good fortune no person or other property is injured, the damage to the truck itself results from just the kind of danger for which the responsibility for defective products is imposed on the seller. The trial court did not err in holding that plaintiff had stated a cause of action for strict liability"); <u>Anderson v. Chrysler Corp</u>., 184 W.Va. 641, 644-45, 403 S.E.2d 189 (Sup.Ct.App. 1991) (West Virginia recognizes a common law cause of action for strict liability if the damage to a product results from a sudden calamitous event attributable to a dangerous defect or design of the product); <u>American Fire and Casualty Co. v. Ford Motor Co</u>., 588 N.W. 2d 437, 439-40 (Sup. Ct. 1999) ("They distinguished the

11

disappointed consumers from the endangered ones.  Fire has been characterized as a sudden and highly dangerous occurrence. *Pennsylvania Glass,* 652 F.2d at 1174.  A truck starting itself on fire would certainly qualify more as a danger than as a disappointment").

None of the cases on which Defendant has placed primary reliance in this case - Alloway v. Gen. Mar. Indus., L.P., 149 N.J. 620 (1997); Goldson v. Carver Boat Corp., 309 N.J. Super. 384 (App. Div. 1998); Int'l Flavors & Fragrances, Inc. v. McCormick & Co., Inc., 575 F.Supp.2d 654 (D.N.J. 2008); Marrone v. Green & Polmare Constr., Inc., Docket No. A-3651-07T2, 2009 N.J. Super. LEXIS 24 (App. Div. Feb. 4, 2009); Millman v. Subaru of America, Inc., Civil Action No. 07-4846 (JLL), 2008 U.S. Dist. LEXIS 17257 (D.N.J. Mar. 6, 2008); Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F.Supp.2d 494 (D.N.J. 2000); and Trans Hudson Express v. Nova Bus Co., No. 06-4092, 2007 U.S. Dist. LEXIS 26724 (D.N.J. Ap. 10, 2007) - supports dismissal of this case.  Defendant's reliance on Alloway, 149 N.J. at 620, begs the question.  For risking repetition, Alloway reserved the general issue projected by this class action.

Marrone dealt with siding to a house.  The Court concluded that the house was the "product" and that the circumstances in Marrone fell outside the exception to the economic loss doctrine. International Flavors & Fragrances, Inc., v. McCormick

& Co., Inc., 575 F. Supp. 2d 654 (D.N.J. 2008), which concerned contaminated paprika in barbeque seasoning, is similar to Marrone.

Millman 2008 WL at 62302 and TransHudson, 2007 WL at WL 1101444 relied on Naporano, 79 F.Supp. 2d at 504 for the proposition that "New Jersey law contains no 'sudden and calamitous' exception to the economic loss doctrine. . ." But Naporano, which was decided three years before the Appellate Division in Green, miscalculated the authoritative sweep of the relevant precedents. No case holds that the economic loss doctrine absolutely prohibits recovery in tort where a product is so unreasonably dangerous that it poses a substantial risk of an instantaneous, abrupt and draconian accident causing serious damages. No case holds that social interests do not justify the application of tort principle to that situation.

Finally, Goldson, 309 N.J. Super. at 384, which concerned a powerboat, was decided on the basis of federal admiralty principles. The discussion of New Jersey law was dictum, and it was limited to the specific facts relating at Goldson's purchase of the powerboat. Id. at 396 ("we are satisfied that the particular circumstances of this case do not justify application of product liability or tort remedies."). Goldson, like every precedent cited by Defendants, recognizes that tort principles may very well apply to claims involving a substantial risk of a

serious, unanticipated injury, particularly where the wrongdoer is aware of the defect and does nothing about it.

More than twenty years ago, the Third Circuit explained the rationale for the automobile exception to the economic loss doctrine in another context. In ruling that the economic loss doctrine would not control where a product's failure "caused a sudden, violent and calamitous accident which posed a serious threat to persons and property", the Third Circuit stated:

> It is pure fortuity that the explosion that reduced Consumer Power's engine to scrap did not damage any person or property nearby. The defective compressor disc did not lead merely to a loss of efficiency or a decline of profits; the disc's failure caused a sudden, violent and calamitous accident which posed a serious threat to persons and property. The damage caused by the explosion is property damage, not economic loss.

Consumers Power Co. v. Curtiss-Wright Corp., 780 F.2d 1093, 1099 (3d. Cir. 1986). So, too, "[i]t is pure fortuity" that the defective Porsche engine "did not damage any person or property nearby."

This being the case, and considering the nature and importance of automobiles, the Court should deny the motion to dismiss the claim for strict liability.

C. The Amended Class Action Complaint States a Claim For Relief Under The New Jersey Consumer Fraud Act.

Read realistically, the Complaint sets forth the essential elements of a claim for relief under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. (the "CFA").

Specifically, Defendant intentionally failed to inform consumers, like Plaintiff, that the Porsche water-cooled engine was defective. This signal, continuing omission enabled Defendant to evade its responsibility to cure that defect. After introduction of the water-cooled engine in 1999, Defendant learned about the latent design defect with the 1999/996 Porsche model engine. But ignoring the safety of consumers, Defendant purposefully took a myopic approach to this serious problem. That intentional omission of a material fact caused Plaintiff to suffer an ascertainable loss.

"To establish a private CFA claim involving an omission of a material fact, a Plaintiff must demonstrate that the Defendant 'concealed, suppressed or omitted a material fact, knowingly, and with the intent that other rely on the omission'" and that Plaintiff has suffered an ascertainable loss as a result of such knowing omission. Zorba Contractors, Inc. v. Housing Auth., City of Newark, 362 N.J. Super. 124, 139 (App. Div. 2003) (quoting Varacallo v. Massachusetts Mutual Life Ins. Co., 332 N.J. Super. 31, 43 (App. Div. 2000)).

That is precisely what Defendant did, as stated in the Complaint:

4.    By complaints of its customers, Porsche was on notice that the Porsche 911 engines were defective and not fit for their intended purpose of properly and effectively converting gasoline into motion so that the car moves and functions. Porsche actively concealed the existence and nature of said defects from Plaintiff and the Class members at the time of purchase and thereafter. Porsche has not recalled the Porsche 911 to repair the defects, nor has it offered to repair the defects to its customers free of charge, nor has it offered to reimburse Porsche owners, present or past, who incurred costs relating to engine system repairs, replacement and/or associated costs.

7.    Porsche refuses to cover costs relating to the defective Porsche engine in vehicles that are out of the 4-year/50,000 mile new car limited warranty and thus Plaintiff must pay all repair costs out-of-pocket.

19.    At Protosport, the vehicle underwent extensive inspection and diagnosis and it was determined that antifreeze leaked into the engine oil through a defective cylinder. Protosport informed November that they had previous experience with this same engine problem and that it was caused by a latent manufacturer's design defect with the 1999 996 Porsche model engine, which was the first year that Porsche switched from an air-cooled to a water-cooled engine.

20.    Protosport informed Noble that the Porsche engine was damaged beyond repair and that he would have to either buy a used engine or buy a rebuilt crate engine directly from Porsche, to which engine Porsche has corrected the aforesaid design defect.

21. Noble subsequently contacted Porsche Cars of North America ("PCNA") on multiple occasions to report and complain about the defects with the Porsche engine.

22. A regional service manager from PCNA ultimately informed Noble that PCNA would not pay for the replacement of the defective engine and related out-of-pocket expenses because his vehicle was currently more than four years outside of its 4 yr/50,000 miles new car limited warranty, and therefore was not eligible for any type of goodwill consideration, as goodwill funds are utilized as PCNA's discretion and are reserved for individuals who have purchased products new from a franchised retail dealership.

23. On information and belief, Porsche, through its dealerships, agents, servants, employees and/or customers and other members of the public, were put on actual and/or constructive notice of the defective Porsche engines. Porsche knew or should have known that the engines in the Porsche 911's were defective. Further, Porsche did not offer to cover the costs of replacing these defective Porsche engines, claiming that such costs were not covered by the 4yr/50,000 mile limited warranty.

37. At the time Porsche sold the 1999 Porsche 911 Carrera Coupe vehicles, Porsche was aware, or reasonably should have been aware, of the foreseeable risks associated with the use of its vehicles incorporating defective water-cooled engine systems.

38. When the Plaintiff and the Class members bought the Porsche vehicles, they were not aware of their dangerous and defective nature.

39.  Porsche 911 owners using and driving
     said vehicles with the defective water-
     cooled engine systems were not aware of
     the dangerous and defective nature of
     said vehicles.

40.  Porsche failed to give adequate
     warnings, instructions, or recall
     notices to its customers about the
     reasonably foreseeable dangers that
     could result from driving the above
     mentioned vehicles with defective water-
     cooled engines, as well as cover the
     costs of repairing and replacing said
     engine systems.

41.  Due to Porsche's failure to provide
     adequate warnings, instructions or
     recall notices about the dangerous and
     defective nature of the Porsche 911
     vehicles, Plaintiffs and the Class
     members have been damaged. Such damages
     would not have been suffered if Porsche
     provided adequate warnings, instructions
     and/or recall notices.

42.  Plaintiff and the Class members have
     suffered damages that were directly and
     proximately caused by the unreasonably
     defective and dangerous Porsche 911
     vehicles, and have suffered damages
     because of Defendant's failure to give
     adequate warnings, instructions or
     recall notices regarding any reasonably
     foreseeable problems with the Porsche
     911 engine systems that could arise
     under reasonable foreseeable conditions
     of use.

1.  The Amended Class Action Complaint Sufficiently Pleads
    Unlawful Conduct

    Defendant doth protest too much concerning the sufficiency

of the claim for relief for consumer fraud.   Defendant knew

about the defective, dangerous product, not only from Complaints by consumers and through its dealerships, agents, servants and employees (Id. Para. 23).   The Amended Class Action Complaint states clearly that, when Plaintiff contacted a regional service manager of Defendant, Plaintiff was denied corrective action because "goodwill funds are utilized at [Defendant's] discretion and are reserved for individuals who have purchased products new from a franchised retail dealership" [Id. Para. 22] Simply put, the Complaint sufficiently alleges a knowing omission of a material fact on the part of Defendant.   Cox v. Sears, Roebuck & Co., 138 N.J. 2, 17 (1994) (in the case of knowing omissions, Plaintiff must demonstrate that Defendant acted with knowledge).

The cases on which Defendant places primary reliance – Frederico v. Home Depot, 507 F.3d 188 (3d Cir.2007), Rait v. Sears, Roebuck & Co., Civil Action No. 08-2461 (JJL), 2009 U.S.Dist. Lexis 70217, (D.N.J. August 11, 2009) and Re: Pain and Surgery Ambulatory Surgical Center, 2007 U.S.Dist. Lexis 45122, at *12 – offer Defendant no succor.   The critical and controlling point of distinction between Frederico and this case is that Frederico did not put Home Depot on notice of its "precise misconduct".   Here, Plaintiff has stated quite precisely that Defendant engaged in a knowing omission of imparting the presence of a specific defect in an automobile. The exact moment that Defendant learned that its products were

19

unreasonably dangerous is peculiarly within the knowledge of Defendant and should be the subject of discovery.  Rait did not involve a knowing omission of a specific defect.   In Re: Pain and Surgery Ambulatory Surgical Center, noting "that the parties are equally in possession of the relevant information regarding when, for whom, and in what amount facility fees were sought…," the Court directed Liberty Mutual to file an amended pleading containing those facts.   Here, risking repetition, the precise circumstances in which Defendant learned of the product defect is peculiarly within Defendant's knowledge.   So Plaintiff needs discovery to flush out the specifics of Defendant's knowledge.

2.   The Amended Class Action Complaint Sufficiently Pleads That Plaintiff Suffered An Ascertainable Loss

Defendant has taken a myopic approach to the averments in the Amended Class Action Complaint establishing an ascertainable loss.   Quite simply, Plaintiff's ascertainable loss is the difference between a Porsche 911 with a nondefective engine and a Porsche 911 with a defective engine that renders the car inoperable because the design defects cause antifreeze to leak in the engine oil through a defective and cracked cylinder. (Amended Class Action Complaint, paras. 3, 4 and 5). These specific allegations are sufficient to state an ascertainable loss under the Consumer Fraud Act.   Thiedemann v. Mercedes-Benz USA, LLC, 183, N.J. 234, 248 (2004) ("a demonstration of loss in

value will suffice to meet the ascertainable loss hurdle").  The failure of Solo, Franulovic and Parker to demonstrate a loss in value distinguishes this case from the cases cited at pages 13 to 15 of Defendant's Memorandum of law.

Defendant has miscalculated the authoratative sweep of Perkins v. Daimler Chrysler Corp., 383 N.J. Super 99 (App. Div. 2006), on which it places primary reliance.  In Perkins, the alleged defect in the automobile's component "had never manifested its alleged inadequacies…" Id. at 104.  "It also was not alleged that the exhaust manifold has even actually required repair or replacement…"  Id. at 112, Writing for a unanimous panel, Judge Fisher was particularily careful to note that Perkins is inapplicable to "those circumstances in which safety concerns might be implicated, as to which we offer no view…" Id., at 111-12.  Duffy v. Samsung Electronics America, Inc., Civ. No. 06-5259 (DRD), 2007 U.S. Dist. Lexis 14792 (D.N.J. March 2, 2007) is also inapplicable here because Duffy failed to allege a measureable loss.

In averring a loss in value, harm attributable to a specific defect, the Amended Class Action Complaint sufficiently pleads an ascertainable loss.

3.  The Amended Class Action Complaint Sufficiently Pleads a Causal Relationship Between Defendant's Unlawful Conduct And Plaintiff's Ascertainable Loss

Read sensibly, the Amended Class Action Complaint states a causal relationship between Defendant's unlawful conduct and Plaintiff's ascertainable loss because it states that but for Defendant's unlawful conduct such damages would not have occured. Specifically, paragraph 41 of the Amended Class Action Complaint states:

> 41. Due to Porsche's failure to provide adequate warnings, instructions or recall notices about the dangerous and defective nature of the Porsche 911 vehicles, Plaintiff and Class members have been damaged. Such damages would not have been suffered if Porsche provided adequate warnings, instructions and/or recall notices.

This allegation is a legally sufficient averment of causal relationship. Accord, Strzakowlski v. GMC, No. 04-470, 2005 U.S. Dist. LEXIS, 18111, 2005 U.S. Dist. LEXIS, at *25 (D.N.J. Aug. 16, 2005) (allegation that Plaintiff would not have purchased a vehicle if manufacturer had disclosed the relevant defect was sufficient under Consumer Fraud Act).

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

NAGEL RICE, LLP
Attorneys for Plaintiffs


By: s/ <u>Bruce H. Nagel</u>
Dated: October 5, 2009                    BRUCE H. NAGEL

23