UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GILBERT NOBLE, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>PORSCHE CARS NORTH AMERICA, INC.,<br><br>Defendant. | Civil Action No. 2:08-3658 (SDW)<br><br>**OPINION**<br><br>February 18, 2010 |

**WIGENTON,** District Judge.

Before the Court is Defendant Porsche Cars North America, Inc.'s ("PCNA" or "Defendant") Motion to Dismiss Plaintiff Gilbert Noble's ("Noble" or "Plaintiff") Amended Class Action Complaint ("Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a); and 1332(d)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). The Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons discussed below, the Court grants Defendant's Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is the purchaser of an allegedly defective 1999 Porsche 911 Carrera Coupe ("Porsche 911" or "vehicle"). Plaintiff seeks to bring a class action complaint "on behalf of himself and all other persons who purchased a […] Porsche 911 […] which vehicle had or

1

currently has the defective Porsche 996 water-cooled engine and have incurred or will incur fees for the service, repair and/or replacement" of said engine.  (Am. Compl. ¶ 25.)

Plaintiff purchased his vehicle in 2005 from a Buy Right Dealership in Union City, New Jersey.  (*Id*. ¶ 15.)  The vehicle was manufactured during the first year that Defendant began equipping their products with a new 996 water-cooled engine ("engine") instead of the older air-cooled engines.  (*Id*. ¶ 19.)  Plaintiff's vehicle was equipped with the "new" engine.  (*Id*. ¶ 2.)  Plaintiff used and maintained the vehicle without incident until October 2006, when he noticed "large quantities of smoke being emitted from the tail pipe."  (*Id*. ¶¶ 16, 17.)  Plaintiff contacted a mechanic, who recommended he take the vehicle to a Porsche specialist.  (*Id*. ¶ 18.)  Plaintiff had the vehicle towed to Protosport, a Porsche specialist in Pompton Plains, New Jersey.  (*Id*.)  A Protosport representative found that antifreeze had leaked into the vehicle's engine oil through a defective cylinder, irreparably damaging the engine.   (*Id*. ¶¶ 19, 20.)   The Protosport representative informed Plaintiff that he "had previous experience with this same engine problem" and told Plaintiff that the leak was due to a latent manufacturer design defect in the engine.  (*Id*. ¶ 19.)

Plaintiff reported his vehicle's defect to Defendant "on multiple occasions."  (*Id*. ¶ 21.)  However, Defendant refused to cover the cost of replacing Plaintiff's engine and his "related out-of-pocket expenses" because the vehicle was "currently more than four years outside of its 4yr/50,000 mile new car limited warranty . ..."  (*Id*. ¶ 22.)  Additionally, the Defendant informed the Plaintiff that his vehicle was not eligible for "goodwill consideration" because goodwill funds are "utilized at PCNA's discretion and are reserved for individuals who have purchased products new from a franchised retail dealership."  (*Id*.)

2

On July 22, 2008, Plaintiff commenced the instant action by filing a Class Action Complaint and Jury Demand asserting two causes of action against PCNA sounding in "Strict Products Liability" pursuant to N.J. STAT. ANN. 2A:58C-1, *et seq.* and "Breach of Express Warranty" (the "Complaint"). On March 27, 2009, PCNA moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). On September 3, 2009, Plaintiff filed the Amended Complaint which replaced his breach of warranty and statutory strict liability claims, with claims for common law strict liability and violation of New Jersey's Consumer Fraud Act, N.J. STAT. ANN. 56:8-1. On September 11, 2009, Defendant filed the current Motion to Dismiss.

## MOTION TO DISMISS STANDARD

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips,* 515 F.3d at 231 (quoting *Pinker v. Roche Holding Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  As the Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556–57, 570) (internal citations omitted).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Id.*, the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2).

## DISCUSSION

### I. Count I – Strict Liability

In count one of the Amended Complaint, Plaintiff pleads a common law cause of action for strict liability.[1]  Defendant argues that Plaintiff's tort claim is precluded by the economic loss doctrine.  Plaintiff on the other hand contends that the economic loss doctrine does not apply in this case because the antifreeze leakage and resulting smoke poses a serious risk to persons and/or property other than the Porsche 911s themselves.

---

[1] Plaintiff acknowledges that his claim is expressly excluded from the language found in New Jersey's Product Liability Act.  (Pl.'s Br. 3); *see also* N.J. STAT. ANN. § 2A:58C-1(b)(2).

4

The economic loss doctrine generally "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir. 1995). Specifically, it bars tort claims for harm sustained to the product alone, as opposed to harm to persons or other property damage. The New Jersey Supreme Court reasoned that "[w]hen the harm suffered is to the product itself, unaccompanied by personal injury or property damage . . . principles of contract, rather than of tort law, [are] better suited to resolve the purchaser's claim." *Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 632 (1997) (holding that an individual plaintiff was limited to remedies under the U.C.C. when seeking to recover for purely economic loss); *see also Goldson v. Carver Boat Corp.*, 309 N.J. Super. 384, 397 (App. Div. 1998) (holding that where damage is confined to an allegedly defective product itself, plaintiffs' remedies are confined to contract law). In this case, Plaintiff's only alleged injury is to his vehicle. Thus, in most cases, Count I would be precluded by the economic loss doctrine. Plaintiff, however, claims there is an exception to the economic loss doctrine where the defect "projects a substantial risk of causing a sudden, unexpected and calamitous accident causing serious harm to persons or other property." (Am. Compl. ¶ 5.)

Courts in this District have already held that "New Jersey law contains no 'sudden and calamitous' exception to the economic loss doctrine." *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 504 (D.N.J. 1999); *see also Millman v. Subaru of America, Inc.*, No. 07-4846, 2008 WL 623032, at *3 (D.N.J. Mar. 6 2008) (dismissing Plaintiff's product liability claim and holding there is no "sudden and calamitous" exception to the economic loss doctrine in New Jersey law). Furthermore, this Court is unaware of any New Jersey court recognizing this exception.[2] *See Green v. General Motors Corp.*, No. A-2831-01T-5, 2003 WL

---

[2] The Third Circuit in *Consumers Power Co. v. Curtiss-Wright Corp.*, 780 F.2d 1093 (3d Cir.1986), did recognize a "sudden and calamitous" exception to the economic loss doctrine. However, despite the Third Circuit's holding in

5

21730592, at * 5 (App. Div. July 10, 2003) ("[a]s a final matter, we note that in the six years since *Alloway*, the Court has not sought to implement the potential ['sudden and calamitous'] exception recognized in that decision or to expand the scope of tort law in any other respect in connection with claims of pure economic loss."); *see also Trans Hudson Express, Inc. v. Nova Bus Co.*, No. 06-4092, 2007 WL 1101444, at * 5 (D.N.J. Apr. 11, 2007) (holding that "it is reasonable to assume that the New Jersey Supreme Court would… reject[] the 'sudden and calamitous' exception to the economic loss doctrine" and explaining that plaintiff's remedy was appropriately governed by the U.C.C.).

Likewise, Plaintiff's strict liability claim is appropriately remedied under contract law.[3] Consequently, Count I of the Amended Complaint is dismissed.

## II. Count II – New Jersey Consumer Fraud Act

To state a claim under New Jersey's Consumer Fraud Act ("CFA") a plaintiff must plead "three elements: (1) unlawful conduct ...; (2) an ascertainable loss ...; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007) (citation omitted); *see also Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 500 (D.N.J. 2009) (outlining pleading elements for claims under CFA). In this case, Defendant

---

*Consumers Power,* the New Jersey Supreme Court has not yet resolved the issue of whether the U.C.C. or tort law controls where the defective product at issue poses a serious risk to other property or persons, but ultimately only causes harm to the product itself. *See*, *e.g.*, *Alloway*, 695 A.2d at 273 (explaining that "in this case we do not resolve the issue whether tort or contract law applies to a product that poses a risk of causing personal injuries or property damage but has caused only economic loss to the product itself"). Nevertheless, one year after the *Alloway* decision was rendered, the Appellate Division, in *Goldson*, chose to address the very issue left unresolved by the New Jersey Supreme Court and held that there was no such exception. *Goldson*, 309 N.J. Super. at 397. Furthermore, in *Naporano*, the Court addressed the tension between *Goldson* and *Consumers Power* stating that although "this Court is constrained to follow and apply" Third Circuit precedent, "[t]his court need not follow *Consumers Power* if it is clear that the present state of New Jersey law is such that a different result is clearly dictated." *Naporano*, 79 F.Supp.2d at 501. Consequently, in light of the overwhelming authority and precedent supporting it, this Court agrees with the courts in *Goldson* and its progeny.

[3] New Jersey has adopted the U.C.C. to govern commercial transactions such as the purchase and sale of goods. *See generally* N.J. Stat. Ann. §§ 12A:2-102, *et seq.*

6

argues, among other things, that Plaintiff cannot prove the second element necessary to maintain his CFA claim (ascertainable loss) because the Porsche 911 performed under its warranty. This Court agrees.

New Jersey courts have not provided clear precedent for the specific facts alleged in the present case – a plaintiff claiming an ascertainable loss for an allegedly dangerous and defective automobile, four (4) years out of its warranty – and so, in accordance with *Erie R.R. Co. v. Tompkins*, the Court must anticipate how the New Jersey Supreme Court would rule based upon the alleged facts. 304 U.S. 64, 58 (1938); *see also Scotts African Union Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church*, 98 F.3d 78, 92 (3d Cir. 1996) (stating that where applicable state law is unclear, federal court sitting in diversity must predict how state's highest court would rule).

In accordance with New Jersey law, this Court holds that a plaintiff cannot maintain an action under New Jersey's CFA when the only allegation is that the defendant "provided a part – alleged to be substandard – that outperforms the warranty provided." *Perkins v. DaimlerChrysler Corp.*, 383 N.J. Super. 99, 112 (App. Div. 2006) (holding that "a claim that a defect may, but has not, manifested itself until after the expiration of the warranty period cannot form the basis for a claim under the CFA."); *see also Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 251 (2005) ("[t]he defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate 'loss' that the CFA expressly requires for a private claim under the CFA, bringing with it the potential for treble damages, attorney's fees, and the court costs and fees").

In *Perkins*, the plaintiffs appealed the trial court's dismissal of the plaintiffs' class action claims under the CFA for failure to state a claim. *Perkins*, 383 N.J. Super. at 104. On appeal,

7

the Appellate Division held that the manufacturer's failure to advise the vehicle owner that her exhaust manifold may breakdown or require repair after the expiration of the warranty period could not constitute a violation of the CFA. *Perkins*, 383 N.J. Super. at 99. The Court reasoned that:

> To interpret the CFA, beyond its present scope, to cover claims that the component part of a product, which has lasted through the warranty period, may eventually fail, would be tantamount to rewriting that part of contract which defined the length and scope of the warranty period. . . . [which] would also have a tendency to extend those warranty programs for the entire life of the vehicle.

*Id*. at 113. Though the Court in *Perkins* was careful to note that its decision did not address "those circumstances in which safety concerns might be implicated," we agree with the Appellate Division's rationale and find its holding just as applicable here, in a case where safety concerns are alleged. *Id*. at 111. A recent opinion from the Court is instructive.

In *Duffy v. Samsung Electronics America, Inc.*, plaintiff filed a class action complaint alleging, among other things, a violation of the CFA. No. 06-5259, 2007 WL 703197 (D.N.J. March 2, 2007). The plaintiff in *Duffy* claimed that his Samsung Microwave oven was manufactured with a defective part that caused his microwave to turn on without human operation and catch on fire. *Id*. at *2. He further alleged that the defect in his microwave was the same defect attributed to nearly 184,000 Samsung microwave ovens installed in recreational vehicles ("RV") sold in the U.S.. *Id*. According to the plaintiff, Samsung was aware of the defect in microwaves installed in both the RVs and homes; however, Samsung, in cooperation with the United States National Highway Traffic Safety Administration ("NHTSA"), issued a recall only for the RV microwaves but not ones installed in homes. *Id*. Plaintiff alleged that the limited recall took place because NHTSA's jurisdiction to order recalls was limited to vehicles and thus similar or identical microwaves installed in homes were not recalled despite the fact that

8

they also contained the defective part and presented identical fire hazards. *Id*. Significantly, however, the plaintiff's microwave was subject to a limited warranty that had expired at the time his microwave's defect became apparent. *Id*. at *1. In dismissing the plaintiff's complaint under the CFA, this Court, citing *Perkins*, found that the plaintiff could not prove he had an ascertainable loss:

> [B]ecause Plaintiff's microwave continued to perform beyond the period in which Samsung was contractually bound to repair or replace any defective part, Plaintiff cannot maintain a CFA claim. To recognize Plaintiff's claim would essentially extend the warranty period beyond that to which the parties agreed.

Id. at * 8.

Likewise, in this case, the Porsche 911's "defective" engine outperformed its limited warranty. As alleged in the Amended Complaint, Plaintiff's vehicle, which he purchased "used" in 2005, was originally subject to a "4-year/50,000 mile new car limited warranty." (Am. Compl. ¶ 7.) Plaintiff has not alleged he purchased his car with any additional warranty. Furthermore, at the time the defect manifested itself, Plaintiff's car was more than four (4) years outside of its original warranty. (*Id.* ¶ 22.) This Court refuses to re-write a warranty that expired over four years ago. Thus Count II of the Amended Complaint will be dismissed.[4]

---

[4] It should be noted that a recent opinion from this District could be interpreted to question *Duffy's* holding and the interpretation of *Thiedmann* and *Perkins*. In *Maniscalo v. Brother Intern. Corp. (USA)*, the Court declined to extend *Perkins* to a situation where the extended warranty had expired at the time the complained defect manifested itself. 627 F. Supp. 2d 494 (D.N.J. 2009). However, the facts in *Maniscalo* are markedly different than the ones found here. In *Maniscalco*, it was held that purchasers, who made specific allegations that a manufacturer *purposefully limited* the warranty period of allegedly defective printers so that the printer heads would fail after warranty coverage expired (but prior to the product's expected useful life) and marketed the product to uninformed consumers anyway in order to maximize profits, had sufficiently plead a CFA action. *Id*. at 501-02. In this case, Plaintiff makes no such allegations. In fact, according to the Amended Complaint, the Porsche 911 lasted *four (4) years* past the initial warranty period. Furthermore, though the Court in *Maniscalo* held that the defendant's warranty defense was inapplicable, it applied the warranty defense in the context of finding that plaintiff sufficiently plead an unlawful act (the first element required to state a claim under the CFA), and did not fully discuss the defense's applicability to whether plaintiff had sufficiently pled an ascertainable loss. *Id*. at 502-03.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED and the Amended Complaint is DISMISSED.

**SO ORDERED.**

s/ Susan D. Wigenton<br>
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.